# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

ANTONIO C. ROBINSON,                                                                              PLAINTIFF
ADC #110422

v.                                    2:21CV00120-BSM-JTK

WALLACE B. MCNARY,                                                           DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Antonio C. Robinson ("Plaintiff") is incarcerated at the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC"). Plaintiff sued Defendant EARU Captain Wallace B. McNary in his personal and official capacities. (Doc. No. 1-1 at 1-2). Plaintiff alleged Defendant McNary subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment. (Id. at 4).

Defendant McNary has filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 69-71, 81). Plaintiff has responded.

(Doc. No. 75, 77-80). After careful consideration, and for the reasons set out below, the Court recommends Defendant McNary's Motion be granted.

## II.     Plaintiff's Complaint

Plaintiff alleges that at approximately 7:00 p.m. on June 9, 2021, Defendant McNary placed Plaintiff in a three-foot holding cell, stripped Plaintiff naked, and gave Plaintiff only a see-through suicide gown with which to dress. (Doc. No. 1-1 at 4). According to Plaintiff, he remained in that cell dressed in only the gown with his "genitals and behind showing" until approximately 12:30 p.m. the following day, June 10, 2021. (Id.). Plaintiff says he was "subject[ed] to homosexuality[1] and laughter by inmates and male and female guards that passed [him] inside of that cage." (Id.). Plaintiff explains he felt humiliated and embarrassed, and that his entire body ached as a result of the experience. (Id). Plaintiff seeks damages and transfer to a different prison. (Id. at 5).

## III.    Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant

---

[1] Plaintiff's deposition testimony establishes that the "homosexuality" was limited to homosexual comments and gestures by inmates. (Doc. No. 69-2 at 43:21-44:24).

'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

### IV. Facts and Analysis

Plaintiff maintains Defendant McNary violated Plaintiff's Eighth Amendment rights by subjecting him to cruel and unusual punishment.

#### A. Official Capacity Claims

Plaintiff's official capacity claims are the equivalent of claims against the State of Arkansas; as such, Plaintiff's official capacity damages claims are barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Accordingly, Defendant McNary's Motion should be granted in connection with Plaintiff's official capacity damages claims.

#### B. Personal Capacity Claims—Cruel and Unusual Punishment

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. Conditions of confinement are not cruel and unusual only because the conditions are uncomfortable. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Smith v. Coughlin, 748 F.2d

783, 787 (2d Cir. 1984). Instead, "[c]onditions of confinement . . . constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Whitnack v. Douglas Cty., 16 F.3d 954, 957 (8th Cir. 1994) (internal citation omitted).

To succeed on an Eighth Amendment claim, a plaintiff must prove a subjective element and an objective element. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The Court of Appeals for the Eighth Circuit has explained the two-prong test as follows:

> The defendant's conduct must objectively rise to the level of a constitutional violation . . . by depriving the plaintiff of the "minimal civilized measure of life's necessities," *Rhodes v. Chapman,* 452 U.S. 337, 342, 101 S. Ct. 2392, 69 L.Ed.2d 59 (1981). The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1977). To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).

Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004).

### 1. Plaintiff's Response

During his deposition, Plaintiff provided further factual detail about his claim. Plaintiff explained that in addition to being clothed only in the see-through gown in the three-foot holding cell, he went without a bathroom break, food, or water. (Doc. No. 69-2 at 66:17-67:3; 123:2-9). Plaintiff reiterates these details in his Response. (Doc. No. 75 at 1-2). Plaintiff maintains generally that there are genuine issues of material fact that make summary judgment in Defendant McNary's favor inappropriate. (Doc. No. 75; Doc. No. 79; Doc. No. 80). Plaintiff contends that per policy, inmates are not to be given a gown unless they are suicidal. (Doc. No. 80 at ¶¶ 2, 3, 14, 15). He also asserts Defendant McNary denied him food, drink, and bathroom breaks. (Id. at ¶¶ 5-6).

### 2. No Material Facts in Dispute Preclude Summary Judgment in Defendant McNary's Favor

The allegations that Plaintiff was kept in a small cell, clothed in only a see-through gown, with no bathroom break, no water, and no food for over 17 hours are disturbing. Yet even if Plaintiff could establish that an Eighth Amendment violation occurred, as explained below Plaintiff has not proven that Defendant McNary was deliberately indifferent to Plaintiff's health or safety.

On June 9, 2021, Plaintiff was housed in 20 Barrack at the EARU. (Doc. No. 71 at ¶ 2; Doc. No. 69-1 at ¶¶ 4, 7; Doc. No. 69-2 at 62:13-15). Defendant McNary was the B Shift Commander at the EARU on June 9, 2021. (Doc. No. 69-1 at ¶ 3). That evening, Plaintiff and another inmate were involved in a fight. (Id. at ¶¶ 5, 5).[2] Defendant McNary responded to the call, and found the other inmate with a bloody nose. (Id. at ¶ 5).

Pursuant to unit policy, when an inmate at the EARU is involved in a fight, the inmate is taken out of general population and escorted to the Maximum Security Unit ("MSU") for cell assignment. (Doc. No. 69-1 at ¶ 8; Doc. No. 78 at ¶ 9). While the inmate waits to be assigned a cell in the MSU, the inmate is required to remove all clothing and is provided a paper gown to wear in the interim. (Doc. No. 69-1 at ¶ 10). Plaintiff contests this fact. (Doc. No. 78 at ¶ 10).

Defendant McNary escorted Plaintiff (and the other inmate involved) to the infirmary, and then on to the MSU. (Doc. No. 69-1 at ¶¶ 6-9, 12; Doc. No. 78 at ¶ 7; Doc. No. 81-6). Upon arriving at the MSU, Defendant McNary placed Plaintiff in a holding cell, ordered him to remove his clothing, and gave him a white paper gown to wear while he waited for a cell assignment in the MSU. (Doc. No. 69-1 at ¶ 13). Once Plaintiff was in the MSU holding cell, Defendant McNary

---

[2] There are two paragraphs numbered 5 in Defendant McNary's Declaration. (Doc. No. 69-1).

had no further responsibility for Plaintiff. (Id. at ¶ 14). Plaintiff disagrees. (Doc. No. 78 at ¶ 15). According to Defendant McNary, once in the MSU holding cell, Plaintiff was under the control and authority of the B Shift Lieutenant assigned to the MSU on June 9, 2021. (Doc. No. 69-1 at ¶ 14). Defendant McNary maintains that he lacked authority to assign Plaintiff a cell in the MSU. (Id. at ¶ 15). Again, Plaintiff disagrees. (Doc. No. 78 at ¶ 16).

After Plaintiff was in the MSU holding cell, Defendant McNary went to the control booth to review surveillance video of the fight. Defendant McNary does not recall seeing Plaintiff again after attempting to take Plaintiff's statement. (Doc. No. 69-1 at ¶¶ 18, 20). Defendant McNary's shift ended on June 10, 2021 at 6:00 a.m. (Id. at ¶¶ 3, 4).

Plaintiff asserts that he "is not stating mere allegations or denials in his pleadings, but specific facts showing that there is a genuine issue for trial . . . ." (Doc. No. 75 at ¶ 10). Plaintiff contests numerous material facts not in dispute offered by Defendant McNary. (Doc. No. 78). For example, Plaintiff maintains that Defendant McNary was in charge of officers and inmates in the Max area, and had the authority to place Plaintiff in a cell. (Id. at ¶¶ 4, 15-18). Plaintiff also maintains only inmates at risk for suicide are placed in gowns. (Id. at ¶ 10; Doc. No. 80 at ¶¶ 2-3).

While Plaintiff alleges the gown was see-through, Defendant McNary provided a photograph of the type of gown Plaintiff was given. (Doc. No. 81-10). The Court notes that the gown is not see-through, but rather is opaque, of the type a patient may be given at a visit to the doctor. (Id.)

It is uncontested that Defendant McNary placed Plaintiff in the MSU holding cell with only the paper gown to wear. Plaintiff says that, per policy, only inmates at risk of suicide are to be given gowns. (Doc. No. 80 at ¶¶ 2-3). ADC Administrative Directive 18-16, however, provides

6

that in inmate may be placed on behavior control for "any assaultive, disruptive, or self-injurious behavior . . . ." (Doc. No. 81-9 at 2). The directive further provides that any inmate placed on behavior control will be issued a paper gown. (Id.) EARU policy 10.4.0 also provides that an inmate "shall be placed on Behavior Control for any assaultive, disruptive, or self-injurious behavior . . . ." (Id. at 6). Policy 10.4.0 likewise provides that an inmate on behavior control be given a gown. (Id.) Inmates on behavior control are allowed to have undergarments. (Id. at 2, 6). Plaintiff acknowledged he was placed on behavior control. (Doc. No. 69-2 at 69:18-22). The reason given was because Plaintiff was a threat to others. (Doc. No. 81-7).

The law is settled that simply placing Plaintiff in the cell with only a paper gown and no undergarments was not an Eighth Amendment violation. See Williams v. Delo, 49 F.3d 442, 444, 445-46 (8th Cir. 1995) (four days in strip cell without clothing, among other things, not an Eighth Amendment violation); Seltzer-Bey v. Delo, 66 F.3d 961, 963-64 (8th Cir. 1995) (two days in strip cell with no clothing or running water, among other things, not an Eighth Amendment violation); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 83-84 (8th Cir. 1996) (denial of underwear, among other things, during first day of behavioral program not Eighth Amendment violation).

But also relevant to Plaintiff's claim is Defendant McNary's knowledge of what happened next, of the incremental circumstances; leaving Plaintiff in the cell for hours with only the gown, no food, no water, and no bathroom breaks, may have been a violation. Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) ("[T]he length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis.").

Plaintiff asserts that there is a genuine issue of material fact in dispute as to whether Defendant McNary disregarded Plaintiff's pleas for food, water, and a bathroom break, but

Plaintiff did not support his assertion by citing to material in the record as required by Rule 56(c)(1) of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 56(c)(1) provides:

> A party asserting that a fact cannot be or is generally disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). See also Glover v. Bostrom, case no. 20-2884, 2022 WL 1087586, at *4 (8th Cir. Apr. 12, 2022) (an unsubstantiated allegation is not enough to raise a genuine dispute) (citing Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002)).

Further, Plaintiff's own deposition testimony squarely contradicts his assertion that Defendant McNary denied Plaintiff a bathroom break, and Plaintiff has not offered any explanation for the contradiction. See FED. R. CIV. P. 56(c)(1); City of St. Joseph, Mo. v. Southwestern Bell Telephone, 439 F.3d 468, 475-76 (8th Cir. 2006) (a party that has been deposed may not, at the summary judgment stage, raise an issue of material fact in dispute, by submitting an affidavit that contradicts earlier testimony).

In his Statement of Facts, Plaintiff asserts that Defendant McNary never offered Plaintiff access to the bathroom, or food or drink after several pleas from Plaintiff. (Doc. No. 80 at ¶¶ 5-6).

Plaintiff testified that until 6:00 a.m. on June 10, 2021 Defendant McNary was in and out of doors in the area where Plaintiff was being held. (Doc. No. 69-2 at 41:16-42:1). Upon being asked very pointed questions about his contact with Defendant McNary after being placed in the

MSU cell, Plaintiff further testified that he had no other contact with Defendant McNary. (Id. at 67:17-25).

> Question: Did you have any other contact with him [Defendant McNary] after he placed you in the holding cage, in the maximum security hallway?
>
> Plaintiff: No.
>
> Question: You never had any contact with him after that point?
>
> Plaintiff: After he placed us in the holding cage and he stripped us of our clothings [sic], I hadn't saw him since.

(Id.).

Plaintiff said that on the night in question he saw Defendant McNary and tried to get Defendant McNary's attention to ask why Plaintiff could not have his boxers, but Defendant McNary ignored Plaintiff. (Id. at 68:14-24; 72:25-73:3).

> Question: So you – after he placed you in the holding cage –
>
> Plaintiff: Yes.
>
> Question: you did see him again?
>
> Plaintiff: Yes, sometimes.
>
> Question: And did you speak to him?
>
> Plaintiff: He ignored us. I stated to him, why was I being placed in a holding cage with a suicide gown on.
>
> Question: And your testimony is he didn't respond to you?
>
> Plaintiff: He did not respond.

(Id. at 68:14-24).

> Plaintiff: We tried to get his attention and ask him why can't we have our boxers, why are we in these holding cages naked, and he just totally ignored us.

9

(Id. at 72:25-73:3). To the extent Plaintiff alleges that Defendant McNary ignored Plaintiff's requests for his undergarments—as inmates on behavior control are allowed undergarments (Doc. No. 81-9 at 2, 6)—Plaintiff's allegations fail to state a claim. Less than 24 hours in an opaque gown, even without undergarments, does not rise to the level of an Eighth Amendment violation. See Williams v. Delo, 49 F.3d at 445-46; Seltzer-Bey v. Delo, 66 F.3d at 963-64; and O'Leary, 79 F.3d at 83-84.

Apparently, Plaintiff's attempts to get Defendant McNary's attention happened shortly after Plaintiff was placed in the MSU holding cell—because then, one-to-two hours after Plaintiff was placed in the cell, a Sergeant Smith brought Plaintiff his personal property and placed it in front of the holding cell, but did not allow Plaintiff his boxer shorts. (Doc. No. 69-2 at 72:16-73:21).

Plaintiff last saw Defendant McNary when Defendant McNary was "working off" around 6:00 a.m. on June 10, 2021. (Id. at 68:1-13).

During Plaintiff's deposition, he explained that he believed Defendant McNary violated Plaintiff's rights because "[w]e [Plaintiff and the other inmate involved in the fight] was never offered bathroom breaks or food or anything," among other reasons. (Id. at 66:17-67:2). But Plaintiff was uncertain if he ever requested that anyone let him go to the restroom.

> Question:   That leads me to ask, did you ever request anyone let you go to [the] restroom that – while you were held in that cage?
>
> Plaintiff:   I'm not sure, but I'm pretty sure I did.

(Id. at 118:24-119:2)

As shown by Plaintiff's deposition testimony quoted below, Plaintiff was asked in a direct manner to whom he made a request to use the restroom. Plaintiff identified a couple of different officers—but Plaintiff did not mention Defendant McNary.

| | |
|---|---|
| Question: | Do you remember who that would have been that you made that request of? |
| Plaintiff: | I think it was Sergeant Smith. |
| Question: | Other than Sergeant Smith, did you make that request to anyone else? |
| Plaintiff: | It would probably be Lieutenant Moore, when I spoke with him. And by that time he had instructed them to go ahead and place us in isolation. |
| Question: | But did you ask Sergeant Woodard if you could go to the restroom? |
| Plaintiff: | I think I did. He stated that his shift was just about to start. He had to go to his post or something like that. |

(Id. at 119:3-22).

Plaintiff did not assert that he tried to get Defendant McNary's attention in connection with anything besides Plaintiff's undergarments. Further, Plaintiff did not assert that he let anyone know that he was without food or water.

Problematically, even if there was a violation, nothing in the record establishes that Plaintiff communicated his condition—clothed in only the gown, no bathroom break, no food, no water, all for hours—to Defendant McNary. Plaintiff testified that he did not speak with Defendant McNary after Plaintiff was placed in the holding cell. And the record is void of evidence that Defendant McNary otherwise had knowledge of Plaintiff's condition—through complaints to other ADC officials, through written notes, or through any other means. See Williams v. Delo, 49 F.3d at 446 (discussing defendant's lack of knowledge of conditions plaintiff faced when the defendant had nothing to do with plaintiff after placing plaintiff in strip cell). Additionally, Defendant McNary provided a document signed by a Lieutenant L. Golatt at 8:42 p.m. on June 9, 2021. (Doc. No. 81-7). The document shows that Plaintiff was being placed on

behavior control on June 9, 2021 at approximately 8:42 p.m., to be housed in a strip cell without clothes for 72 hours. (Id.). This document is consistent with Defendant McNary's statement that after Plaintiff was placed in the MSU holding cell, Plaintiff was under the control and authority of the B Shift Lieutenant assigned to the MSU. (Doc. No. 69-1 at ¶¶ 14-15).

Plaintiff also attempts to establish Defendant McNary's liability through Defendant McNary's supervisory position. But Plaintiff testified that he did not know if Defendant McNary was in charge of segregated housing in the MSU on June 9, 2021. (Doc. No. 69-2 at 72:16-73:15, 74:1-5). Plaintiff indicated that a Sergeant Smith told Plaintiff that it was Defendant McNary's doing that Plaintiff was in the holding cell without undergarments. (Id. at 72:12-73:15). To the extent Plaintiff intended Sergeant Smith's statement to prove Defendant McNary's deliberate indifference, the statement is hearsay that the Court cannot consider in deciding Defendant McNary's Motion. FED. R. EVID. 801(c); Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008). The Court notes that even if Defendant McNary was in charge of segregated housing in the MSU that night, Plaintiff nonetheless would have to establish that Defendant McNary had knowledge of the allegedly unlawful conditions but deliberately ignored or tacitly authorized them. Wise v. Lappin, 674 F.3d 939, 942 (8th Cir. 2012); Luckert v. Dodge County, 684 F.3d 808, 817 (8th Cir. 2012). As set out above, nothing in the record indicates that Defendant McNary had such knowledge.

Where, as here, Defendant McNary has moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude summary judgment in Defendant McNary's favor. Wilson v. Miller,

821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Without evidence establishing Defendant McNary's knowledge of Plaintiff's condition, there is no basis to find Defendant McNary deliberately indifferent.[3] Accordingly, Defendant McNary's Motion should be granted.

**V.  Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant McNary's Motion for Summary Judgment (Doc. No. 69) be GRANTED;

2. Judgment be entered in Defendant McNary's favor;

3. Plaintiff's claims be DISMISSED with prejudice.

Dated this 16th day of June, 2022.

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff based his claims on cruel and unusual punishment. But Plaintiff's allegations that female employees saw him in the see-through gown call the Fourth Amendment into play. Based on Plaintiff's Complaint and deposition testimony, there was only infrequent and casual observation as several female employees passed Plaintiff's cell in the hallway. (Doc. No. 1 at 4; Doc. No. 69-2 at 43:21-44:24, 88:6-89:20). The female employees did not make homosexual statements to Plaintiff. (Id.) Further, the gown was not see-through. (Doc. No. 81-10). Timm v. Gunter, 917 F.2d 1093, 1102 (8th Cir. 1990). To the extent Plaintiff intended to bring a privacy claim, based on the record such a claim against Defendant McNary fails.